IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK S. LEMESANY, as Personal Representative
of the Estate of MARK SHANNON LEMESANY,
II, Deceased,

    Plaintiff,

vs.                                                                                  Civ. No. 19-658 KG/SCY

GENERAL MOTORS LLC and ISABELLA
PAIGE YENGST,

    Defendant.

## MEMORANDUM OPINION AND ORDER OF REMAND

This matter comes before the Court upon Plaintiff's Motion to Remand, filed August 15, 2019. (Doc. 10). Defendant General Motors LLC (GM) filed a response on September 5, 2019, and Plaintiff filed a reply on September 18, 2019.[1] (Docs. 13 and 20). Having considered Plaintiff's Motion to Remand and the accompanying briefing, the Court grants Plaintiff's Motion to Remand.

*I. Background*

    *A. Complaint filed in the First Judicial District Court, County of Santa Fe, State of New Mexico on June 11, 2019*

This is a state products liability lawsuit brought by Plaintiff Mark S. Lemesany, as personal representative of the estate of Mark Shannon Lemesany, II, deceased. According to the Complaint, Yengst provided a 1996 GM Saturn sedan to Mark Shannon Lemensany, II, the decedent. On July 9, 2016, the decedent was driving the Saturn sedan in Colfax County, New

---

[1] Defendant Isabella Paige Yengst did not respond to Plaintiff's Motion to Remand because Plaintiff was unable to serve the Complaint for Personal Injury (Complaint) (Doc. 1-8) on her until October 16, 2019. (Doc. 27).

Mexico, when he lost control of the vehicle causing it to roll. "During the rollover, the roof of the subject vehicle crushed into the occupant compartment, causing the enhanced injury of death to the decedent." (Doc. 1-8) at ¶ 8.

Plaintiff brings strict liability and negligence claims against GM for manufacturing a defective vehicle that allegedly had a weak roof, "inadequate restraint systems and glass in conjunction with the roof," and "lacked electronic stability control ('ESC') and/or rollover stability control ('RSC')…." *Id.* at ¶¶ 12-14. Plaintiff also brings a negligence claim against Yengst for providing a defective vehicle to the decedent, failing to properly inspect the vehicle, and failing to warn the decedent of "the defective roof and defective restraint system." *Id.* at ¶¶ 23-25. Plaintiff contends that Yengst "knew or should have known" that the vehicle "was not crashworthy and was unsafe to the driver in a rollover." *Id.* at ¶ 26.

### B. Other Factual Information

Yengst was the registered owner of the Saturn sedan and a passenger in the Saturn sedan at the time of the accident. (Doc. 20-1) at 2. Yengst was also the decedent's girlfriend. (Doc. 13-1) at 5. GM contends that Yengst was 19 years old when the accident occurred. (Doc. 13) at 2. Apparently, at the time of the rollover, the decedent lived in California and Yengst lived in Colorado where she worked as a restaurant hostess. (Doc. 13-1) at 11; (Doc. 20-1) at 2. Plaintiff has presented evidence that on June 19, 2019, eight days after he filed this lawsuit, Yengst was employed in California as a Behavior Technician. (Doc. 20-2).

### C. Notice of Removal (Doc. 1)

GM removed this lawsuit from state court on the basis of diversity subject matter jurisdiction. (Doc. 1) at 3 (citing 28 U.S.C. § 1332). GM demonstrates in the Notice of Removal that this case satisfies the $75,000 amount in controversy necessary for diversity subject matter

jurisdiction. *Id.* at 3-5. GM also establishes that Plaintiff is a citizen of California and that GM is a citizen of Delaware and Michigan. *Id.* at 5. Although GM acknowledges that Yengst was a citizen of California when Plaintiff filed this lawsuit,[2] and, thus, defeats complete diversity of citizenship, GM argues that the Court should disregard Yengst's citizenship because Plaintiff fraudulently joined Yengst as a Defendant. *Id.* at 5-10.

## II. Plaintiff's Motion to Remand (Doc. 10)

Plaintiff asserts that he did not fraudulently join Yengst as a Defendant. Hence, Plaintiff argues that complete diversity of citizenship between Plaintiff and Yengst does not exist, thereby depriving this Court of diversity subject matter jurisdiction and requiring the Court to remand this matter to state court.

GM requests that the Court deny Plaintiff's Motion to Remand, dismiss Yengst from this lawsuit, and retain diversity subject matter jurisdiction in this case. In the alternative, GM contends that since Plaintiff has not served the Complaint on Yengst, the Court should stay ruling on Plaintiff's Motion to Remand so it can depose Yengst in order to "present additional evidence to the Court relevant to the Court's determination of the Motion to Remand." (Doc. 13) at 15. The Court will address GM's alternative argument first.

## III. Discussion

*A. GM's Concerns About Plaintiff's Service of the Complaint on Yengst and Request to Stay Ruling on Plaintiff's Motion to Remand so GM can Depose Yengst*

As the Court noted above, Plaintiff has now served Yengst with the Complaint. GM was concerned with the failure to serve Yengst because it could "suggest[] that Plaintiff may be

---

[2] A removing party must demonstrate that "complete diversity of citizenship existed at the time of the filing of the complaint…." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) (citing *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570–71 (2004)).

3

mistaken about her citizenship. At best, … Yengst's residence and possibly the status of her citizenship is currently unknown." (Doc. 13) at 14. Plaintiff, however, has presented evidence that eight days after he filed this lawsuit, Yengst, in fact, was employed in California as a Behavior Technician. (Doc. 20-2). This evidence should assuage GM's concern about Yengst's citizenship at the time Plaintiff filed the Complaint on June 11, 2019.

Assuming that Yengst's citizenship for purposes of diversity subject matter jurisdiction was California, GM raises the concern that the failure to serve Yengst deprived GM "the opportunity to gather additional evidence from … Yengst that may be useful to the Court's assessment of her fraudulent joinder." (Doc. 13) at 14. As this Court has stated, "The Court is mindful … of the Tenth Circuit's admonition that, in inquiring whether a party is fraudulently joined, the 'objective ... is not to pre-try the merits of the plaintiff's claims.'" *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1148 (D.N.M. 2017) (citation omitted); *see also* 1 *Litigating Tort Cases* § 7:7 (Sept. 2019 update) (observing that argument can be made that discovery on issue of fraudulent joinder "should generally not be permitted, as courts have cautioned against having 'mini-trials' on jurisdictional issues in the preliminary stages of the litigation"). GM has failed to convince the Court that allowing discovery will not result in an unwarranted mini-trial on the merits of Plaintiff's negligence claim against Yengst. *See, e.g., Bellman*, 248 F. Supp. at 1148 (finding no fraudulent joinder despite acknowledging that "record is too undeveloped" and "[a]dditional discovery" may provide evidence relevant to fraudulent joinder issue); *Salinas v. Goodyear Tire & Rubber Co.*, 2017 WL 3605392, at *5 (D.N.M.) (finding no fraudulent joinder while observing that discovery could unearth facts related to fraudulent joinder claim and that "it is not entirely clear at this early pleading stage whether Plaintiff has a viable negligence cause of action against" non-diverse defendant). The Court,

therefore, denies GM's request to stay ruling on Plaintiff's Motion to Remand so GM can depose Yengst on fraudulent joinder issues.

### B. Fraudulent Joinder

#### 1. Standard

It is well-established that "[t]here is a presumption against removal jurisdiction, *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.1995), and the party seeking removal has the burden of proof to establish jurisdiction, *Martin v. Franklin Capital Corp.,* 251 F.3d 1284, 1290 (10th Cir. 2001)." *Brazell v. Waite*, 525 Fed. Appx. 878, 881 (10th Cir. 2013). A defendant may remove a case to federal court based on diversity subject matter jurisdiction absent complete diversity of citizenship if the plaintiff fraudulently joined a nondiverse party in the state action in order to defeat federal jurisdiction. *See Am. Nat'l Bank & Trust Co. v. Bic Corp.,* 931 F.2d 1411, 1412 (10th Cir. 1991) (stating that if plaintiffs joined non-diverse defendants "without good faith, defendant may remove on the grounds of fraudulent joinder").

"To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing*, LP, 648 F.3d 242, 249 (5th Cir. 2011)). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). That burden of proof requires "clear and convincing evidence." *Pampillonia*, 138 F.3d at 461. In determining whether a defendant has met that burden of proof, the Court is not "compelled to believe whatever the plaintiff says in his complaint." *Brazell v. Waite*, 525 F. Appx. 878, 881 (10th Cir. 2013). Instead, "federal courts

5

may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Smoot v. Chicago, Rock Island and Pac. R.R. Co.,* 378 F.2d 879, 881–82 (10th Cir. 1967).

GM does not argue the existence of actual fraud. Rather, GM argues that Plaintiff joined Yengst simply to destroy complete diversity of citizenship. The Court, thus, will focus on the second prong of the fraudulent joinder test. For this purpose, "the test is 'whether the defendant has demonstrated that there is *no possibility* of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *McGrath v. City of Albuquerque*, 2015 WL 4994735, at *19 (D.N.M.) (emphasis added) (citations omitted); *see also Smoot*, 378 F.2d at 882 (stating that fraudulent joinder must be "established with complete certainty upon undisputed evidence"). This fraudulent joinder standard "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced." *Montano v. Allstate Indemnity Co.*, 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir.) (quoted in *McGrath*, 2015 WL 4994735, at *17).

### 2. *Plaintiff's Negligence Claim Against Yengst*

Plaintiff bases his negligence claim against Yengst on New Mexico Uniform Civil Jury Instruction 13-1402 (2018 ed.). New Mexico Uniform Civil Jury Instruction 13-1402 states that a "supplier of a product has a duty to use ordinary care to avoid a foreseeable risk of injury caused by a condition of the product or manner in which it is used." This duty of care does not depend on a "supplier's *regular* engagement in the business of supplying" products "and applies

even to the gratuitous, isolated bailment."³ UJI 13-1402 NMRA 1998, Committee Commentary (emphasis added). On the other hand, "[i]f a product is not supplied to satisfy a business purpose of the gratuitous bailor, the gratuitous bailor has no duty to inspect and the bailor's duty to warn extends only to risks of injury known to the bailor." *Id.* (citing *Restatement (Second) of Torts* § 388, comment n and § 392, comment a); *see also Williams v. Herrera*, 1972-NMCA-057, ¶¶ 17-20, 83 N.M. 680 (holding that when defendant loaned latently defective ladder to plaintiff for personal use defendant had no duty to inspect ladder for defects unless defendant "'knew or by exercise of due care should have known' of the defect in the ladder") (citation omitted).

GM notes that the Complaint does not allege that Yengst provided the Saturn sedan to the decedent for any business purpose on Yengst's behalf. More specifically, GM contends that the decedent and Yengst had a romantic relationship, not a work-related relationship, and that considering Yengst's young age and employment as a restaurant hostess, there is no indication that the couple were traveling through New Mexico to satisfy a business purpose of Yengst's. GM further notes that the latent nature of the alleged defects would not have been obvious to a person in Yengst's position. Notably, GM observes that if Yengst was aware of any defects, she would not have ridden in the vehicle as a passenger. GM, therefore, concludes that Yengst, as a gratuitous bailor who would not know or by exercise of due care would not have known of the Saturn sedan's defects, had no duty to inspect the Saturn sedan or warn the decedent about any defects prior to lending the vehicle to the decedent for a non-business purpose. Thus, GM argues Plaintiff cannot bring a negligence claim against Yengst.

---

³ "A bailment requires possession by the bailee. Possession requires 'the union of two elements, physical control over the thing possessed, and an intent to exercise that control.'" *Olivas v. Olivas,* 1989-NMCA-064, ¶ 18, 108 N.M. 814 (quoting R. Brown, *The Law of Personal Property* § 10.2, at 213–14 (W. Raushenbush 3d ed. 1975)).

As Plaintiff correctly observes, GM asks the Court to assume certain facts. GM's "argument prematurely assumes" that Yengst lacked a business purpose in lending the Saturn sedan to the decedent and that she did not know or by exercise of due care would not have known about the alleged defects. *See Salinas*, 2017 WL 3605392, at *5. "But these facts are not for this Court to assume…." *Id.* For example, Plaintiff could have a negligence claim against Yengst if discovery revealed that (1) Yengst relinquished control of the Saturn sedan to the decedent for a business purpose, despite being the decedent's girlfriend, a restaurant hostess, and a passenger in the vehicle, and (2) Yengst actually knew about the alleged defects or by exercise of due care should have known about the alleged defects, but she did not inspect the vehicle or warn the decedent about the defects. "While it is not entirely clear at this early pleading stage whether Plaintiff has a viable negligence cause of action against [Yengst], the Court cannot conclude that there is absolutely no possibility of asserting this type of claim." *Id.* Resolving all factual and legal issues in Plaintiff's favor, the Court determines that GM has not met its heavy burden of proving fraudulent joinder, whether by clear and convincing evidence or otherwise. Consequently, the Court will remand this case to state court for lack of diversity subject matter jurisdiction.

### C. GM's Request to Dismiss Yengst as a Defendant

Since the Court has determined no fraudulent joinder occurred and the case must be remanded to state court, the Court lacks subject matter jurisdiction to rule on GM's request to dismiss Yengst as a Defendant. *See, e.g., Smith v. Wisconsin Dep't of Agriculture, Trade and Consumer Protection*, 23 F.3d 1134, 1139 n. 10 (7th Cir. 1994) (holding that federal court has no "authority to dismiss a claim over which it never had jurisdiction in the first instance" and that federal court should have remanded case to state court rather than dismissing it); *Baker v. Tri–*

*Nations Express, Inc.,* 531 F.Supp.2d 1307, 1316–17 (M.D. Ala. 2008) (rejecting motions to dismiss or to sever nondiverse parties, and reasoning that "[w]ithout complete diversity, this federal court of limited jurisdiction has no authority to do anything other than remand"). Therefore, the Court declines to rule on GM's request to dismiss Yengst as a Defendant.

IT IS ORDERED that

1. Plaintiff's Motion to Remand (Doc. 10) is granted; and

2. this lawsuit is remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE